Salinger, Kenneth W., J.
Plaintiffs claim that Defendants have breached their contractual obligation to let them participate in an ongoing tax audit by the Internal Revenue Service of Demoulas Super Markets, Inc., (the “Company”). Arthur S. Demoulas (“Arthur S.’j, seeks a preliminary injunction that would order the Company and Arthur T. Demoulas (“Arthur T”) to include Plaintiffs’ representative in, or copy him on, all communications they have with the IRS. For their part, Defendants insist that Arthur T.’s contractual right to control the conduct of the audit absolutely trumps the right of Arthur S. to participate. The Court concludes that both sides misread the relevant contract provision, but that Arthur S. is entitled to preliminary injunctive relief that is somewhat narrower than he sought.
By way of background, the Company’s current and former stockholders resolved a bitter dispute regarding management of the Company in 2014, leading to an agreement that some of the stockholders would sell their shares to others. The transaction closed in December 2014. Since then, Arthurs, and Rafaela Evans have been the designated representatives of the stockholders who sold their shares, and Arthur T. has been the designated representative of the remaining Company shareholders.
The parties anticipated that the Company might be involved in future tax audits or other tax proceedings. Any such proceeding could have financial implications for past and future shareholders because the Company is a subchapter S corporation and thus its earnings are treated as having been passed through to its shareholders for income tax purposes.
As a result, the Stock Purchase Agreement (“SPA”) among the Company’s former and current stockholders provides that if the Company is audited by a taxing authority then Arthur T. “shall control the conduct of’ the audit on behalf of the Company and its current and past shareholders, “provided that” Arthur S. and Ms. Evans “shall have the right to participate” in the audit and that the Company and its remaining stockholders (including Arthur T.) “may not settle or otherwise resolve” the audit proceeding without written consent from Arthur S. and Ms. Evans, “unless such settlement or resolution would not adversely affect the Sellers.”
The Court concludes that this provision is not ambiguous, and that the Court must therefore decide what it means based only on the language of the SPA. See, e.g., Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 287 (2007) (interpretation of unambiguous written contract “is a question of law for the court” to resolve); Berkowitz v. President & Fellows of Harvard College, 58 Mass.App.Ct. 262, 270, rev. denied, 440 Mass. 1101 (2003) (whether contract language “is ambiguous is also a question of law for the court”).
In the SPA, Arthur T.’s right to control the tax audit is expressly made subject to the condition that Arthur S. and Ms. Evans be allowed to “participate” in the proceeding. The right to participate in the audit is a right to “take part in” the audit. See Webster’s Ninth New Collegiate Dictionary at 858 (1991).
The Court holds that the right of Arthur S. and Ms. Evans to participate in the tax audit includes the right to have their designated representative sit in on any meetings and listen in on any telephone calls, and to receive copies of all paper or electronic communications, between the Company and the IRS involving any kind of substantive inquiry or discussion regarding the ongoing audit. The contractual right to participate also includes the right to receive copies of, or at least to obtain access to, all materials provided by the Company to the IRS. However, the right to participate does not include the right to be part of non-substantive communications between the Company and the IRS, to communicate directly with the IRS, or to make comments or ask questions during meetings or phone calls with the IRS, as that would be inconsistent with Arthur T.’s contractual right to control the audit process.
Arthur S. has demonstrated that he is likely to succeed on the merits of his claims. The undisputed facts demonstrate that Arthur T. has violated Plaintiffs’ contractual right to participate in the audit process, but that to date the violation appears to have been quite minor. Arthur S. and Ms. Evans have designated Gerard Levins as their representative for the purpose of participating in the ongoing tax audit. Arthur T. allowed Mr. Levins to attend the initial meeting with the IRS in May 2016, albeit grudgingly and only after a fair amount of back-and-forth between the two sides’ lawyers. Since then, however, the IRS had has additional conversations with the Company’s representatives regarding draft requests for documents or other information that Levins was not told about and not allowed to participate in.
Arthur T. stipulated in the SPA “that the other parties would be damaged irreparably in the event any of the provisions of this Agreement are not performed in accordance with their specific terms or otherwise are breached or violated.” Defendants are bound by this stipulation. As a result, Arthur S. is not required to prove that he would be irreparably harmed if no preliminary injunction were to issue.
Under the circumstances of this case, the Court concludes that no bond or other security should be *508 required before it issues an appropriate preliminary injunction
ORDER AND PRELIMINARY INJUNCTION
The motion by Arthur S. Demoulas for a preliminary injunction is ALLOWED. The Court orders that Demoulas Super Markets, Inc. (the “Company”), Arthur T. Demoulas, and their agents, employees, attorneys, and others acting on their behalf shall: (1) take all steps necessary to give Plaintiffs or their designated representative the opportunity to attend any meetings and listen to any telephone calls between the Company and the Internal Revenue Service (“IRS”) involving any kind of substantive inquiry or discussion regarding the ongoing tax audit of the Company; (2) provide Plaintiffs or their designated representative with copies of all paper or electronic communications between the Company and the IRS regarding the tax audit; (3) provide Plaintiffs or their designated representative with access to, and upon request with copies of, all materials provided by the Company to the IRS.